**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| CEDA CLINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:22-cv-02121-DCN-KDW |
| vs. | ) | |
| | ) | **ORDER** |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of the* | ) | |
| *Social Security Administration*, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Magistrate Judge Kaymani D. West's report and recommendation ("R&R"), ECF No. 13, that the court reverse and remand the Commissioner of Social Security's (the "Commissioner") decision denying claimant Ceda Cline's ("Cline") application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). For the reasons set forth below, the court adopts the R&R in full and remands for further proceedings.

## I.  BACKGROUND

### A.  Procedural History

Cline filed an application for DIB on May 6, 2014, alleging that she has been disabled since October 13, 2009. The Social Security Administration (the "SSA") denied Cline's application initially on August 29, 2014, ECF No. 8, Tr. 491–95, and upon reconsideration on November 26, 2014, Tr. 499–503. Cline requested a hearing before an administrative law judge ("ALJ"), and ALJ Gregory Wilson presided over a hearing held on October 25, 2016, at which Cline and a vocational expert ("VE"), Mark Leaptrot, testified. In a decision issued on May 5, 2017, the ALJ determined that Cline was not

1

disabled within the meaning of the Act from October 13, 2009, through the date last insured. Tr. 1120–37. Cline requested review of the ALJ's decision by the Appeals Council, and on February 20, 2018, the Appeals Council denied Cline's request, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

On April 13, 2018, Cline filed her first complaint in this court seeking judicial review of the Commissioner's administrative determination. Tr. 1152–57. Cline obtained an order, filed June 28, 2019, reversing the Commissioner's decision and remanding the case for further proceedings based upon the findings in the report and recommendation of the magistrate judge. Tr. 1182–83; Cline v. Berryhill, No. 5:18-cv-1016-DCN, ECF Nos. 16, 20. The order remanded the matter based on the ALJ's evaluation of Cline's fibromyalgia and on the ALJ's consideration of the VE's testimony regarding the conflict on jobs identified by the VE.[1] Tr. 1159–75. On September 19, 2019, the Appeals Council issued an Order remanding the case to the ALJ "for further proceedings consistent with the order of the court." Tr. 1179.

---

[1] In pertinent part, the magistrate judge could not determine whether the ALJ properly considered Cline's symptoms, based on the correct criteria set forth in SSR 12-2p, to establish fibromyalgia as a medically determinable impairment. Cline v. Berryhill, No. 5:18-cv-1016-DCN, ECF No. 16 at 13 (June 20, 2019). The court found that the ALJ only considered the required number of tender points and the exclusion of other disorders that could cause fibromyalgia symptoms, and the ALJ only considered certain portions of the 1990 ACR Criteria when he determined that Cline's fibromyalgia was not a medically determinable impairment. Id. Thus, this court remanded the matter to the ALJ so that he could determine whether his conclusions regarding Cline's fibromyalgia as a part of her disability application were supported by substantial evidence. Id. In other words, the court remanded the matter to ensure that the ALJ properly followed SSR 12-2p in his consideration of Cline's fibromyalgia at step three when he evaluated which impairments were severe impairments. Id. at 7.

2

On January 31, 2020, ALJ Wilson conducted a second administrative hearing, Tr. 1085–1119, and on March 25, 2020, he issued his decision again denying Cline's claim, Tr. 1048–75. On April 21, 2020, Cline appealed the ALJ's decision to the Appeals Council. Tr. 1248–50. On March 11, 2022, Cline submitted Written Exceptions to the ALJ's final decision arguing that the ALJ's finding that Cline can perform medium work is not supported by substantial evidence. Tr. 1251–55. On May 16, 2020, the Appeals Council found no basis to change the ALJ's March 25, 2020 decision and declined to assume jurisdiction over the case. Tr. 1041. This made the ALJ's March 25, 2020 decision the final decision of the Commissioner after remand. Tr. 1042.

On July 5, 2022, Cline filed the instant action seeking review of the ALJ's decision.[2] ECF No. 1, Compl. Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), the action was referred to Magistrate Judge West. On May 5, 2023, the magistrate judge issued the R&R, recommending that the court reverse and remand the ALJ's decision for further administrative action. ECF No. 13, R&R. The Commissioner filed objections to the R&R on May 17, 2023, ECF No. 14, and Cline responded to the objections on May 31, 2023, ECF No. 16. As such, the matter has been fully briefed and is ripe for the court's review.

### B. Medical History

The parties are familiar with Cline's medical history, the facts of which are ably recited by the R&R. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of the Commissioner's

---

[2] Cline was instructed that if she wanted a federal court to review the Commissioner's final decision after remand by the court, she would need to file a new civil action. Tr. 1041.

3

objections to the R&R.  Cline alleges a disability onset date of October 13, 2009, when she was forty years old.  Tr. 626.  Cline alleged a disability due to depression, severe major depressive disorder, panic disorder, depersonalization/derealization disorder, histrionic and paranoid personality disorder, irritable bowel syndrome, fibromyalgia, permanent hand damage with osteoarthritis, back spasms, muscle pain, and trouble remembering and concentrating.  Tr. 630–31.  Cline previously worked as a motor vehicle assembler.  Tr. 1112–13.

### C.  The ALJ's Second Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505.  The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job.  See 20 C.F.R.

4

§ 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Cline was disabled from her alleged onset date of October 13, 2009, the ALJ employed the statutorily required five-step evaluation process in the March 25, 2020 decision. Tr. 1051–75. At the first step, the ALJ found Cline did not engage in substantial gainful activity during the period from her alleged onset date of October 13, 2009, through her date of last insured of March 31, 2015. Tr. 1053. At the second step, the ALJ found that Cline had the following severe impairments through the date last insured: plantar fasciitis, irritable bowel syndrome, fibromyalgia, carpal tunnel syndrome of the right hand and elbow, left pisotriquetral joint osteoarthritis, cervical degenerative disc disease, left knee osteoarthritis, anxiety disorder, PTSD, and major depressive disorder. Tr. 1053. At the third step, the ALJ found that Cline does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the SSA's Listing of Impairments, 20 CFR § 404.1520(d), et seq. Tr. 1054. Before reaching the fourth step, the ALJ determined that Cline retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the RFC to perform medium work as defined in 20 CFR 404.1567(b) except that she could frequently climb ramps/stairs, stoop, crawl, crouch and kneel. She could occasionally climb ladders/ropes/scaffolds. She could frequently perform reaching, handling and fingering. She had to avoid concentrated exposure to vibration. She

5

> could perform simple, routine, repetitive tasks with a reasoning level up to
> and including, on a sustained basis for eight hours a day, five days a week,
> in two-hour increments with normal work breaks. She could do jobs where
> occasional decisionmaking was required and with occasional changes in the
> work setting.

Tr. 1056. Based on the RFC, at the fourth step, the ALJ found that Cline was capable of

performing past relevant work as a motor vehicle assembler. Tr. 1073. Finally, at the

fifth step, the ALJ found that based on Cline's age, education, work experience, and

RFC, the transferability of job skills is not material to the determination of disability

because the framework supports a finding that Cline is "not disabled" whether or not she

has transferable job skills. Tr. 1074. Alternatively, the ALJ found that Cline can make a

successful adjustment to other work that exists in significant numbers in the national

economy, including work as a store laborer and cleaner. Tr. 1074–75. Therefore, the

ALJ concluded that Cline was not disabled under the meaning of the Act during the

period at issue.

## II. STANDARD

This court is charged with conducting a de novo review of any portion of the

magistrate judge's R&R to which specific, written objections are made. 28 U.S.C.

§ 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of

the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The

recommendation of the magistrate judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court. Mathews v. Weber, 423

U.S. 261, 270–71 (1976). However, de novo review is unnecessary when a party makes

general and conclusory objections without directing a court's attention to a specific error

in the magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th

Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for

6

clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id. (internal citations omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."  Id.  Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).  Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action."  Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969).  Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard.  Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).  Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.  Id. at 517.

### III.  DISCUSSION

In her initial brief, Cline presented three arguments why the ALJ's decision was not supported by substantial evidence.  ECF No. 9.  She first argued that the ALJ failed to properly follow Social Security Ruling 12-2p ("SSR 12-2p") which expressly explains how to evaluate claims involving fibromyalgia.  Id. at 27.  Fibromyalgia claims are unique in that the symptoms "can wax and wane so that a person may have bad days and good days."  Id. at 28.  Cline contended that the ALJ did not consider the waxing and waning of Cline's condition, instead relying, in part, on the lack of objective evidence to reach his decision, which is an analysis foreclosed by Fourth Circuit precedent.  Id. at 28–29 (referencing Arakas v. Comm'r, 983 F.3d 83 (4th Cir. 2020)).  Since the ALJ did not properly evaluate Cline's fibromyalgia, his decision purportedly did not contain a proper evaluation of all of Cline's impairments.  Id.  Second, Cline averred that "the ALJ's reliance on select, post date-last-insured activities is insufficient to support his decision." Id. at 29.  Third, she claimed that "the ALJ's reliance on [her] receiving conservative treatment for her fibromyalgia was likely unreasonable."  Id. at 30.  As such, Cline explained that the ALJ failed to properly consider her impairment of fibromyalgia throughout his decision which likely impacted his determination of her RFC as well as his evaluation of the opinion evidence.  Id. at 31.  Accordingly, Cline contended that the ALJ erred in finding that Cline's impairments do not support a finding of disability, and the ALJ's finding was not supported by substantial evidence.  Id.  Cline requested that the court reverse and remand the claim to the Commissioner for further proceedings.  Id.

In the R&R, the magistrate judge explained that since the ALJ found that Cline's fibromyalgia was a severe medically determinable impairment, the objective evidence of

tender points and potential exclusionary symptoms was not relevant to the current analysis. ECF No. 13 at 20–21. The magistrate judge noted that the ALJ cited to his consideration of the objective evidence eight times in his RFC analysis, meaning it clearly factored into his decision, which is "at odds with the Fourth Circuit's clear and unequivocal holding in Arakas." Id. at 21 (citing 983 F.3d at 97). The magistrate judge explained that based on the inappropriate reliance on objective evidence regarding the impact of Cline's diagnosed fibromyalgia, she could not determine that the ALJ's finding was supported by substantial evidence or was without legal error. Id. at 22. Thus, the magistrate judge recommended that the court reverse and remand the Commissioner's decision for further consideration of the evidence under the analysis set forth in SSR 12-2p and the Fourth Circuit's decision in Arakas. Id. at 21.

In her objections to the R&R, the Commissioner argues that the R&R's focus on objective evidence is misplaced, and the appropriate framework requires the court to consider whether substantial evidence supported the ALJ's RFC finding. ECF No. 14 at 3. The Commissioner contends that the record supports the ALJ's finding that Cline could perform a range of medium work notwithstanding her fibromyalgia. Id. at 3–4. For example, she acted as a caregiver part-time for an elderly Alzheimer's dementia patient, for her mother who was diagnosed with Parkinson's disease, and with a 20-year-old family friend who became addicted to methamphetamine. Id. (citing Tr. 424, 955, 985). The Commissioner emphasizes that according to the ALJ, "[Cline's] testimony that she [worked as a caregiver to multiple persons during the period in question]" was "[m]ost persuasive." Id. at 5 (citing Tr. 1069). The Commissioner also directs the court to look at Cline's conservative and effective treatment as well as the state agency

9

physician's conclusions, which, taken together, all support the ALJ's finding that Cline could perform a range of medium work.  Id. at 7.  The Commissioner also seeks to differentiate the instant facts from those in Arakas by emphasizing that the ALJ's 18-page RFC analysis fairly characterized the longitudinal record.  The Commissioner further highlights that "the R&R acknowledged that 'the ALJ appropriately considered [Cline's] wide ranging and significant physical activities.'"  Id. at 1 (citing R&R at 21).  Finally, the Commissioner emphasizes that even if the court were to find an error, it would be harmless, because even if the ALJ restricted Cline to light exertional work, there were still jobs existing in the national economy that she could perform.  Id. at 9 (citing Tr. 1115–16).  Thus, the Commissioner skips over the question of whether the ALJ applied the proper legal standard and focuses primarily on whether substantial evidence supports the ALJ's finding.  See generally id.

In her response, Cline contends that the Commissioner's objections "fail to provide any persuasive argument to rebut the Magistrate Judge's recommendation" as they simply "rehash h[er] prior argument that the Magistrate Judge already considered and properly denied."  ECF No. 16 at 1.  Moreover, Cline argues that the Commissioner misconstrued the R&R's findings and precedent in this circuit.  Id. at 2.  Arakas held that "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence."  Id. at 7 (quoting Arakas, 983 F.3d at 97 (emphasis added)).  Cline suggests that the Commissioner's identified cases where ALJs purportedly based their conclusions on the lack of objective evidence in the wake of Arakas were permissible not because of the lack

of objective evidence but because of the lack of <u>any</u> evidence, objective or subjective.  <u>Id.</u>

at 4 (citing <u>Barbara S. v. Kijakazi</u>, 2022 WL 3005386, at *9 (D.S.C. June 15, 2022),

<u>report and recommendation adopted</u>, 2022 WL 2990763 (D.S.C. July 28, 2022); <u>Smith v.</u>

<u>Saul</u>, 2021 WL 1016255, at *22 (D.S.C. Mar. 17, 2021)).  Cline further concludes that

the Commissioner's reliance on the state agency medical consultant opinions is

misplaced because the opinions were explicitly based on the lack of objective evidence.

<u>Id.</u> at 6.  Moreover, Cline argues that the Commissioner's conclusion is biased—to the

extent it rests on her purported caregiver or academic activities, those limited actions

were only possible because of the assistance Cline received from others.  <u>Id.</u> at 5.  In fact,

such actions accord with a diagnosis of fibromyalgia whereby a person has good and bad

days.  <u>Id.</u>  Finally, Cline contends that the ALJ's error was not harmless because "the

rejected testimony included abilities less than that required by light work as the ALJ

acknowledged," meaning that the VE's conclusion that jobs exist in the national economy

that require light exertional work is irrelevant or, at a minimum, must be revisited.  <u>Id.</u> at

7 (citing Tr. 1063–64).  As such, Cline requests the court reverse and remand the matter

to the ALJ for further proceedings consistent with the law.  <u>Id.</u> at 8.

 The leading Fourth Circuit opinion on this issue is <u>Arakas v. Commissioner</u>, 983

F.3d 83 (4th Cir. 2020).  The Fourth Circuit explained that it "uphold[s] a Social

Security disability determination if (1) the ALJ applied the correct legal standards and (2)

substantial evidence supports the ALJ's factual findings."  <u>Id.</u> at 94.  In <u>Arakas</u>, it

concluded neither requirement was met.  First, the court emphasized that ALJs apply an

incorrect legal standard by requiring objective evidence of symptoms even when they

also consider other evidence in the record.  <u>Id.</u> at 97.  That holding is doubly true when

applied to consideration of fibromyalgia—"a disease whose symptoms are entirely subjective with the exception of trigger-point evidence." Id. at 96. Put explicitly, "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Id. at 97. Thus, the court initially found that the ALJ's evaluation of the claimant's symptoms was based on an incorrect legal standard as well as a critical misunderstanding of fibromyalgia. Id. at 98. Second, the court found that the ALJ's discrediting of the claimant's subjective complaints was also unsupported by substantial evidence. Id. "Specifically, the ALJ erred: (1) by selecting citing evidence from the record as well as misstating and mischaracterizing material facts; (2) finding [the claimant's] complaints to be inconsistent with her daily activities; and (3) failing to consider fibromyalgia's unique characteristics when reviewing [her] medical records." Id. Taken together, the Fourth Circuit found that the record as a whole clearly established the claimant's disability and therefore her legal entitlement to disability benefits. Id. at 112.

The court examines whether the ALJ applied the correct legal standard, reviews whether the ALJ's conclusions are supported by substantial evidence, and finally considers whether the errors—if any—are harmless.

### A. Correct Legal Standard

At issue is whether the ALJ applied the correct legal standard when he determined Cline's RFC. See Tr. 1056–73. To determine a claimant's RFC, an ALJ must follow a two-step process set forth in 20 C.F.R. § 404.1529 and SSR 16-3p to evaluate the claimant's symptoms. Arakas, 983 F.3d at 95. First, the ALJ must "determine whether

objective medical evidence presents a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms." Id.  Second, the ALJ must assess the intensity and persistence of any symptoms stemming from the impairments to determine if they affect the claimant's ability to work.  Id.

"Although there is no medical listing for fibromyalgia, Titles II and XVI of Social Security Ruling 12-2p provide[] guidance on how the Commissioner develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how to evaluate fibromyalgia in disability claims and continuing disability reviews." Smith v. Colvin, 2015 WL 7571946, at *7 (W.D. Va. Nov. 24, 2015) (citing SSR 12-2p, 77 Fed. Reg. 43,640 (July 25, 2012), available at 2012 WL 3104869).  Pursuant to SSR 12-2p, a claimant can establish a medically determinable impairment of fibromyalgia by demonstrating (1) a diagnosis of fibromyalgia from an acceptable medical source and (2) evidence that satisfies either the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia (the "1990 Criteria"), or the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria")."  SSR 12-2p; see also Conrad v. Comm'r of Soc. Sec. Admin., 2021 WL 9036993, at *4 (W.D.N.C. Nov. 12, 2021).  SSR 12-2p further provides guidance on the actions the Commissioner should take when there is insufficient evidence to determine whether the claimant has a medically determinable impairment of fibromyalgia.  SSR 12-2p.

Here, the ALJ found that Cline's fibromyalgia was a severe impairment.  Tr. 1053–54.  Despite this finding, the ALJ found that Cline's fibromyalgia did "not medically equal listing severity and that fibromyalgia in combination with other impairments does not medically equal listing severity."  Tr. 1054.  The ALJ reached this

determination because "the impairments do not result in inability to ambulate effectively . . . or inability to perform fine and gross movements effectively." Id. The ALJ indicated he reached this determination also "by fully considering the effects of fibromyalgia in determining RFC based on SSR 12-2p." Id.

SSR 12-2p states that when making an RFC determination, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" SSR 12-2p, 2012 WL 3104869, at *6. When determining whether a claimant can do any past relevant work or other work that exists in significant numbers in the national economy, SSR 12-2p instructs an ALJ to consider "widespread pain and other symptoms associated with [fibromyalgia]" and to "be alert to the possibility that there may be exertion or nonexertional limitations (for example, postural or environmental) that erode a person's occupational base." Id. The ruling advises that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of the symptoms," "all the evidence in the case record will be considered." Id. at *5

In other words, an ALJ may not discredit a social security disability claimant's subjective complaints regarding fibromyalgia symptoms based on a lack of objective evidence substantiating them. Arakas, 983 F.3d at 97; accord. Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852, 864 (6th Cir. 2011) ("[T]he absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant"). Indeed, courts in this circuit and others have "noted that fibromyalgia poses particular challenges to credibility analyses due to the limited available objective medical

14

evidence." Elburn v. Comm'r Soc. Sec., 2014 WL 7146972, at *3 (D. Md. Dec. 12, 2014); see also Dowell v. Colvin, 2015 WL 1524767, at *3 (M.D.N.C. Apr. 2, 2015) ("Numerous courts have recognized that fibromyalgia's symptoms are entirely subjective and that there are no laboratory tests that can confirm the presence or severity of the syndrome.") (cleaned up). Even where the ALJ considers subjective evidence, that alone does not escape the precedent set by Arakas if the ALJ places "undue emphasis" on the objective evidence and indicates that the objective evidence is the "chief, if not definitive, reason for discounting [the claimant's] complaints." McManus v. Comm'r of Soc. Sec. Admin., 2022 WL 3371785, at *6 (D.S.C. July 26, 2022), report and recommendation adopted sub nom, McManus v. Kijakazi, 2022 WL 3371192 (D.S.C. Aug. 15, 2022). Thus, the crux of this case comes down to the extent to which the ALJ inappropriately relied on objective evidence (or lack of evidence) when deciding Cline's RFC in light of her diagnosed fibromyalgia.

On March 25, 2020, the ALJ issued a decision denying Cline's claim for disability. Tr. 1048–84. The R&R noted that the ALJ cited to his consideration of the objective evidence eight times in his RFC analysis, which indicated that the objective evidence factored into his decision. R&R at 21. The Commissioner does not directly address the issue of whether the ALJ applied an erroneous legal standard—at most, the Commissioner argues that the objective evidence referenced dealt with the orthopedic impairments, not Cline's fibromyalgia. See ECF No. 14 at 8. Further, the Commissioner emphasizes that the ALJ appropriately considered Cline's wide ranging and significant

physical activities and provided an 18-page RFC analysis which indicates that the ALJ did not overemphasize the lack of objective medical evidence.  Id. at 1.

The court provides the most salient references the ALJ makes to objective evidence and finds that the ALJ discounted Cline's subjective complaints of fibromyalgia symptoms throughout his decision.  See Arakas, 983 F.3d at 97.  First, the ALJ found that "[t]he reported symptoms of difficulty with standing, walking and sitting are inconsistent with objective medical evidence."  Tr. 1057.  Thus, he determined that Cline "had no limitation for standing/walking, had no limitation for sitting and could stand/walk for six of eight hours in an eight-hour workday and sit for six of eight hours in a workday," which led to his determination that she had a "maximum sustained work capability for medium exertion as defined in 20 CFR 404.1567(a)."  Id.  Second, the ALJ found that "[o]bjective medical evidence, opinion evidence, activities of daily living, response to treatment and other relevant evidence support this RFC determination [that Cline may perform medium work]."  Tr. 1059, 1057, 1062–63.  Third, the ALJ specified that "[he found] her allegations of limitations for standing, walking and sitting, in light of the objective evidence, are inconsistent with objective findings."  Tr. 1064.  Similarly, the ALJ discounted Cline's "statements about the intensity, persistence, and limiting effects of her symptoms . . . because the objective medical evidence and other evidence from [Cline], medical sources, non-medical sources, and factors in 20 CFR 404.1529(c) are inconsistent with [Cline's] statements about her alleged symptoms."  Tr. 1065.  Fourth, the ALJ explicitly gave the opinion of Dr. Joseph Grace ("Dr. Grace"), a psychologist, "little weight" because "it is not well-supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the evidence as a whole."  Tr.

1065, 1067. Dr. Grace's opinion may impact the RFC analysis of Cline's fibromyalgia because Cline self-reported that "stress aggravated the fibromyalgia." Tr. 1061. Fifth, the ALJ explicitly gave the opinion of Dr. Gregory Gibson ("Dr. Gibson"), Cline's family physician, limited weight because his opinion "is not well-supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record." Tr. 1069. The ALJ discounted Dr. Gibson's opinion—which includes a diagnosis of fibromyalgia and reports of Cline's pain associated with that ailment—because he claimed to have relied on an evaluation by rheumatologist Dr. Geneva Hill ("Dr. Hill") which diagnosed the fibromyalgia, even though Dr. Hill's opinion was not considered in the ALJ's analysis beyond the medical records from those appointments.[3] Tr. 1066, 1070. But, the ALJ did not cite to, or perhaps consider, multiple years of Dr. Gibson's treatment history with Cline. See Tr. 804–68. In other words, the opinions of Cline's treating psychologist and her family physician were discounted in part because they were unsupported by objective evidence, even to the extent they opined as to Cline's functional abilities as impacted by her

---

[3] Though Dr. Hill was referenced, her opinion was not individually evaluated by the ALJ. See Tr. 1062, 1065–73. Dr. Hill is a rheumatologist who first saw Cline in October 2014 when she diagnosed Cline with fibromyalgia, prescribed medication, and advised her to begin pool exercise, stress reduction, sleep hygiene and continue eating a healthy diet. Tr. 1062. The transcript includes office treatment records from Dr. Hill. Tr. 890–93, 926–32. However, the ALJ did not consider or receive opinion evidence from Dr. Hill regarding Cline's diagnosed fibromyalgia, and to the extent Dr. Gibson, Cline's family physician, provided opinion evidence which relied on Dr. Hill's diagnosis, the ALJ discounted that opinion because Dr. Gibson purportedly did not make the original diagnosis. The Commissioner emphasizes this omission and notes that "[t]he record does not contain an opinion from the rheumatology specialist that [Cline's] fibromyalgia resulted in any functional limitations or contributed materially to her claim of disability, despite knowing that [Cline] applied for disability." ECF No. 14 at 6–7.

17

fibromyalgia.[4]  See id.  Sixth, the ALJ noted that statements from Thomas Cline, the

claimant's husband, were of limited weight because "they are based upon casual

observation rather than objective medical examination and testing."  Tr. 1073.

Altogether, the R&R correctly found the ALJ's analysis of Cline's RFC was almost

entirely informed by objective evidence—expressly discounting subjective evidence in

the process.

      The court agrees with Cline and the magistrate judge that the ALJ applied the

improper legal standard when evaluating objective medical evidence to discount Cline's

fibromyalgia.  The court's decision is the result of the unambiguous standards established

in Arakas and is in line with post-Arakas decisions of district courts in the Fourth Circuit.

See, e.g., Bryson v. Berryhill, 2021 WL 2517682, at *5 (W.D.N.C. June 18, 2021)

(reversing and remanding because the ALJ relied on objective medical evidence to

discount the plaintiff's subjective complaints concerning fibromyalgia); Skipper v. Saul,

2021 WL 168426, at *1 (D.S.C. Jan. 18, 2021) (same); Suzanne O. v. Saul, 2021 WL

1195930, at *6 (E.D. Va. Mar. 30, 2021) (same).  Thus, the Commissioner erred by

essentially requiring that Cline prove her subjective symptoms of fibromyalgia with

objective evidence.  As such, the ALJ applied the incorrect legal standard and that alone

---

[4] The ALJ also found opinions from Dr. Clark and Dr. Millon to be of limited weight.  Tr. 1070, 1072.  The court does not include such a reference in the body of the opinion because Dr. Clark and Dr. Millon opined on Cline's hand function, not her fibromyalgia or issues stemming from her fibromyalgia.  See id.  The court does not find error with the ALJ's reliance on objective evidence in his evaluation of Cline's orthopedic impairments.  Rather, the court confines its analysis of inappropriate discounting of subjective evidence as it relates to Cline's impairments stemming from her diagnosed fibromyalgia.

requires remand for further proceedings in accordance with the analysis set forth in SSR 12-2p and Fourth Circuit precedent.

### B. Substantial Evidence

Additionally, substantial evidence does not support the ALJ's factual findings. See Arakas, 983 F.3d at 97. "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 383 (4th Cir. 2021) (quoting Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015)). The R&R did not reach this step, instead opting to stop the analysis upon finding the ALJ applied the improper legal standard. R&R at 21–22. The Commissioner argues that "the R&R should have considered whether substantial evidence supported the ALJ's [RFC] finding." ECF No. 14 at 3. This court considers substantial evidence in the interest of completeness and because it has already remanded this case once before for failure to adequately assess Cline's fibromyalgia. See Cline v. Berryhill, No. 5:18-cv-1016-DCN, ECF No. 16 (June 20, 2019).

In her objections to the R&R, the Commissioner argues that the record supports the ALJ's finding that Cline could perform a range of medium work—namely, that Cline worked as a caregiver to multiple persons including her aging mother and her own daughter and performed chores around the house. ECF No. 14 at 3–4. The Commissioner also highlights that the ALJ reached his decision in part based upon Cline's conservative treatment plan. Id. at 5. Finally, the Commissioner emphasizes that the state agency physician's conclusions also support the ALJ's finding that Cline could perform a range of medium work. Id. at 7. In response, Cline emphasizes that the Commissioner ignores the evidence of assistance that Cline received to partake in the

cited daily activities and similarly ignores the limitations which impacted her participation.  ECF No. 16 at 5.  Cline also argues that nowhere in the record is there evidence which shows the exertional requirements any activity took and contends that the ALJ ignored that Cline has good and bad days, as accords with a diagnosis of fibromyalgia.  Id.  Additionally, Cline emphasizes that the state agency physician expressly stated that his conclusion as to the "chronicity and severity" of Cline's allegations of pain arose in part because that pain was "unsupported by objective findings."  Id. at 6 (citing Tr. 476).  Finally, Cline contends that binding precedent in this circuit forecloses finding the ALJ's error to be harmless where decisions clearly state that objective evidence may not be used to discount a claimant's diagnosed fibromyalgia.  Id. at 6–7.

The court finds that substantial evidence does not support the ALJ's factual findings.  First, objective evidence of trigger-point findings suggests fibromyalgia impacted Cline.  Nevertheless, Cline's subjective evidence of her impairments— including, inter alia, her self-reported difficulty sitting, walking, and standing—was not adequately considered in the ALJ's analysis of Cline's RFC.  Second and third, the ALJ weighed Cline's daily activities and her conservative treatment too heavily without considering the unique symptoms of a fibromyalgia diagnosis.  Additionally, the ALJ mischaracterized those activities—omitting from consideration Cline's described limitations which impacted the extent of her ability to participate in daily activities and failing to consider that doctors may have considered Cline's preferred treatment plan for chronic conditions.  Fourth, the ALJ provided an inadequate basis to give the non-treating physicians such as the state agency physician greater weight than Cline's treating

physicians who provided Cline with care over an extended period.  As such, the court finds that the ALJ's conclusion as to Cline's RFC improperly discounted subjective evidence of Cline's fibromyalgia even with objective medical evidence of the condition and failed to give controlling weight to her treating physician Dr. Gibson.  Such errors prevent the court from finding that the ALJ's conclusion was supported by substantial evidence and similarly prompt the court to reverse and remand the decision for further proceedings.

### 1. Objective Evidence

Despite finding that Cline had fibromyalgia as a severe impairment in step three, the ALJ discounted Cline's subjective complaints of pain and expressed limitations even with objective evidence of her fibromyalgia.  See Tr. 1053.  If a claimant files for social security disability benefits based on fibromyalgia, the claimant can point to consistent trigger-point findings—i.e., tenderness in specific sites on the body—as objective medical evidence of fibromyalgia in support of his or her application.  Arakas, 983 F.3d at 96.  The ALJ notes that in April 2014, Dr. Gibson diagnosed Cline with fibromyalgia after finding twelve trigger points mostly in the neck area.  Tr. 1073; see also Tr. 824–25, 1620–21.  Dr. Gibson referred her to Dr. Mourtada, a pain management specialist, who confirmed the diagnosis of fibromyalgia in October 2014.  Tr. 1073.  He prescribed her Savella and diagnosed trigger point injections.  He also performed x-rays of her neck which showed some arthritis and performed MRIs which showed mild symptoms.  Tr. 1073.  The results did not match up with Cline's pain and associated symptoms and therefore Dr. Gibson determined that Cline's symptoms arose from fibromyalgia rather than other conditions.  Tr. 1073.  Though the ALJ observes Dr. Gibson diagnosed Cline's

trigger-points and fibromyalgia—which is objective medical evidence of the condition—the ALJ nevertheless gives Dr. Gibson's diagnosis little weight and similarly discounts Cline's self-reported limitations for standing, walking, and sitting as "inconsistent with objective findings." Tr. 1064, 1069, 1073. The objective evidence supported the ALJ's step three finding of fibromyalgia, which should have led the ALJ to give more credence to Cline's subjective observations of how the associated pain impacted her day-to-day life. The ALJ inconsistently analyzed Cline's fibromyalgia symptoms which undermines a finding that those conclusions were based on substantial evidence and weighs in favor of remand.

### 2. Daily Activities

The ALJ selectively interpreted the evidence of Cline's reported daily activities to arrive at his conclusion. In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, ALJs may consider the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). "An ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." Arakas, 983 F.3d at 99 (emphasis in original). The court finds that the ALJ erred by disregarding Cline's qualifying statements regarding the limited extent to which she could perform daily activities and similarly failed to adequately explain how her limited ability to carry out daily activities supported his conclusion that she could sustain eight-hour workdays.

The ALJ noted that in 2014, Cline told a state agency employee that she got her daughter up every day for school and dropped her off about seven miles away and then "after she returned home, she might lie back down." Tr. 1063. She handled chores, i.e., vacuumed the living room every day or every other day, washed dishes, cooked every

other day or sometimes picked up premade food.  Tr. 1063.  Cline went grocery shopping about once every two weeks, though her husband helped her.  Tr. 1063.  The ALJ indicated that Cline "is able to cook, wash dishes, do laundry, fold clothes about half the time, sweep and drive a car."  Tr. 1064.  Cline testified that prior to March 31, 2015, she spent three days a week in bed.  Tr. 1064.  She also stated that "she did not do anything useful around the house, and would lie on the couch and think about everything."  Tr. 1063.  She stated that her fibromyalgia pain on medications was at least a 7/10 and occurred four days a week, lasting all day.  Tr. 1064.  Cline was able to take her child to school and to the movies and go to the beach and the park, as well as to church once or twice a month.  Tr. 1064.  She also provides caregiving to her mother, which "included making sure she had food and helping her to have what she needed."  Tr. 1064.

The ALJ found that taken in aggregate, these activities served as substantial evidence and contradicted the treating physicians who had commented on Cline's pain due to fibromyalgia and her other medical conditions.  See Tr. 1068 (discounting Dr. Grace's opinion as inconsistent with Cline's daily living activities), Tr. 1069 (discounting Dr. Gibson's opinion as inconsistent with Cline's daily living activities).  Conversely, these reported daily activities were used to give great weight to non-examining physicians Drs. Stephen Wissman ("Dr. Wissman"), Judith Von ("Dr. Von"), and Silvie Kendall ("Dr. Kendall").  Tr. 1066 ("[Cline] would cook, do dishes, do laundry, folds clothing, iron, sweep, mop, vacuum, take the trash out, dust, clean the bathroom, clean the kitchen and clean the living room.").  When attributing weight to the respective physicians' opinions, the ALJ omitted the fact that Cline's husband helped her with grocery shopping and that the chores of cleaning the house were, at most, undertaken

every other day.  <u>Compare</u> Tr. 1063–64, <u>with</u> Tr. 1066, 1068–69.  The ALJ also failed to

address Cline's statement that she spent three days a week in bed and that after dropping

her daughter off at school, she might lie back down.  Tr. 1063–64.  The ALJ noted that

Cline's testimony that she serves as a caregiver to her daughter, her mother, and an

addicted individual was the "[m]ost persuasive" evidence for his conclusion, though he

does not define at any point what her various roles as a caregiver entailed.  Tr. 1069.

     The critical differences between activities of daily living and activities in a full-

time job are that "a person has more flexibility in scheduling the former than the latter,

can get help from other persons . . . , and is not held to a minimum standard of

performance as she would be by an employer."  <u>Arakas</u>, 983 F.3d at 101 (citing <u>Bjornson</u>

<u>v. Astrue</u>, 671 F.3d 640, 647 (7th Cir. 2012)).  "[D]isability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations."  <u>Id.</u> (citing

<u>Lewis v. Berryhill</u>, 858 F.3d 858, 868 n.3 (4th Cir. 2017)).  Courts have often found that

ALJs had a tendency "to overstate claimants' Residual Functional Capacities and ability

to work based on their daily activities."  <u>Arakas</u>, 983 F.3d at 101; <u>see also</u> <u>Bjornson</u>, 671

F.3d at 647; <u>Nowling v. Colvin</u>, 813 F.3d 1110, 1122 (8th Cir. 2016); <u>Garrison v. Colvin</u>,

759 F.3d 995, 1016 (9th Cir. 2014).  Even assuming that Cline's daily activities have, at

least at times, been somewhat greater than she generally reported, the ALJ "provided no

explanation as to how those particular activities . . . showed that she could persist through

an eight-hour workday."  <u>Id.</u> at 100.  The ALJ "failed to 'build an accurate and logical

bridge' from the evidence" to his conclusion that Cline "could stand/walk for six of eight

hours in an eight-hour workday and sit for six of eight hours in a workday."  <u>Id.</u> (quoting

<u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016)); Tr. 1057.  The ALJ's reliance on

Cline's testimony that she served as a caregiver for others is not, by itself, compelling. See Tr. 1069.  The ability to do chores without considering whether others helped Cline with those chores or whether those chores were undertaken daily, weekly, or monthly does not by itself suggest that Cline can work eight-hour days.  See Arakas, 983 F.3d at 101.  The court reiterates that the symptoms of fibromyalgia can wax and wane, and Cline's testimony suggests she is bedridden three days a week.  Id.; Tr. 1064.  Thus, the court finds that substantial evidence does not support the ALJ's conclusion that Cline's activities were inconsistent with her subjective complaints but consistent with his RFC assessment.

### 3.  Conservative Treatment

In her initial brief, Cline argues that the ALJ's reliance on Cline receiving conservative treatment for her fibromyalgia was likely unreasonable.  ECF No. 9 at 30.  The R&R does not expressly consider this argument, instead recommending remand for application of the proper legal standard.  See R&R at 21.  Nevertheless, in the interest of completeness, the court considers the Commissioner's objection that the ALJ's decision was consistent with Cline's conservative treatment.  ECF No. 14 at 5–6.

The ALJ did not meaningfully engage with the fact that "a 'conservative' course of treatment could be explained by that fact that fibromyalgia is a '[c]hronic, incurable condition[]' that is 'customarily managed by conservative measures such as medication and dietary changes.'"  Jackie T. v. Kijakazi, 2023 WL 1424573, at *4 (D. Md. Jan. 30, 2023) (quoting Knight v. Comm'r, Soc. Sec. Admin., 2017 WL 3088365, at *2 (July 20, 2017) (internal citations omitted)); see also Dry v. Comm'r, Soc. Sec. Admin., 2014 WL 6983402, at *2 (D. Md. Dec. 9, 2014).  Rather, the ALJ concluded that Cline's

25

impairments with respect to her foot, fibromyalgia, knee, and cervical spine have been treated conservatively and without evasive procedures and "[t]he evidence is persuasive that [Cline] can stand and walk six of eight hours each." Tr. 1057. Thus, the ALJ inappropriately reached his conclusion as to Cline's RFC by overly relying on objective evidence of conservative medications for treatment of Cline's fibromyalgia. Instead, the ALJ was required to also consider Cline's subjective complaints of chronic pain and explicit concerns about addiction as an explanation for why she takes Lortab[5] only sparingly, though it helps manage her pain. Tr. 1063. His failure to do so limits the court's ability to find that the ALJ's conclusions were supported by substantial evidence and weighs in favor of remand.

### 4. Physician Testimony

The SSA instructs claimants that generally, the SSA will

> give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.

20 C.F.R. § 404.1527(c)(2). The Fourth Circuit has held that a "treating physician's testimony is ignored only if there is persuasive contradictory evidence." Arakas, 983 F.3d at 106–07 (emphasis in original). A treating physician's "opinion must be given controlling weight unless it is based on medically unacceptable clinical or laboratory diagnostic techniques or is contradicted by the other substantial evidence in the record." Id. at 107 (emphasis in original) (citing 20 C.F.R. § 404.1527(c)(2)) (the "treating

---

[5] Lortab is a trade name for hydrocodone. Instead of risking addiction to Lortab, Cline avers that she often opts to stay in bed when in pain rather than take Lortab. Tr. 1063.

physician rule"); <u>Coffman</u>, 829 F.2d at 517). "In many cases, a treating [physician's] medical opinion will be entitled to the <u>greatest</u> weight and should be adopted even if it does not meet the test for <u>controlling</u> weight." <u>Id.</u> at 106–07 (alterations and emphasis in original). The test for whether a treating physician's opinion is contradicted by the other substantial evidence in the record asks whether "a reasonable mind could conclude that the opinion conflicts with other evidence in the record." <u>Dowling</u>, 986 F.3d at 385.

In his decision, the ALJ only gave controlling weight to Dr. Gibson's assessment that Cline "had good abilities to relate to others and complete basic activities of daily living, and adequate abilities to complete simple, routine tasks and complex tasks." Tr. 1070. Despite medical records from, <u>inter alia</u>, Drs. Hill, Grace, Gibson, John Millon ("Dr. Millon"),[6] James Essman ("Dr. Essman"), Michael Jordan ("Dr. Jordan"), Sonya Clark ("Dr. Clark") and opinion evidence from psychologist Dr. Grace, family physician Dr. Gibson, hand surgeon Dr. Millon, hand surgeon Dr. Clark, and hand surgeon Dr. Essman, the assessment described above was the only opinion from a treating physician accorded controlling weight. <u>See</u> Tr. 1065–71. Thus, the ALJ concluded that almost all the opinion evidence from Cline's treating physicians was "based on medically unacceptable clinical or laboratory diagnostic techniques or [wa]s contradicted by the other substantial evidence in the record." <u>See</u> <u>Arakas</u>, 983 F.3d at 107; Tr. 1065–73.

However, an examination of the ALJ's conclusion appears flawed considering the unique characteristics of Cline's diagnosed fibromyalgia.[7] For example, the ALJ infers

---

[6] The ALJ refers to Dr. Millon as Dr. Milton throughout his opinion. <u>See</u> Tr. 1070. Cline's medical records indicate that the doctor in question is in fact S. John Millon, MD. <u>See</u> Tr. 709–42. The court therefore refers to him as Dr. Millon.
[7] Given that the challenge presented in this case arises from whether the ALJ appropriately considered Cline's diagnosed fibromyalgia in his evaluation of her

that Dr. Gibson used medically unacceptable techniques when he based his medical opinions upon the fibromyalgia diagnosis from rheumatologist Dr. Hill since Dr. Gibson is a family practice physician, not a specialist in the evaluation of fibromyalgia, musculoskeletal impairments, or mental impairments. Tr. 1069. The ALJ emphasized that Dr. Gibson's findings as reflected in the treatment records do not support his own opinion of Cline's fibromyalgia—for example, the records show that Cline had normal range of motion and strength. Tr. 1069. The ALJ also expressly indicated that Dr. Gibson's opinion was contradicted by substantial evidence in the record—including Cline's purported ability to clean the house, send emails, paint, attend church, and serve as a caregiver to her daughter, her disabled mother, and a young woman addicted to methamphetamine. Tr. 1069. The ALJ found the caregiver activities "most persuasive in reaching [his] conclusion[]" that Dr. Gibson's testimony was inconsistent with the substantial evidence in the record. Tr. 1069. The ALJ's conclusion that Dr. Gibson's opinion should not be given controlling weight indicates a misunderstanding of fibromyalgia which improperly affected the ALJ's analysis of the treating physician rule.

First, the ALJ provided no evidence or analysis as to how Dr. Gibson used medically unacceptable clinical or laboratory diagnostic techniques—merely stating that Dr. Gibson's opinion "is not well-supported" by those techniques. See Tr. 1069. Perhaps the ALJ reaches his conclusion based on Dr. Gibson purportedly admitting that "the basis of his opinion was the evaluation by a rheumatologist rather than his own opinion" or

---

application for DIB, the court confines its analysis of the ALJ's adherence to the treating physician rule as it relates to those doctors who diagnosed and/or treated Cline's fibromyalgia. Thus, the court issues no opinion as to the ALJ's assessment of Cline's doctors who treated her mental or orthopedic impairments.

28

perhaps the ALJ's opinion is based on Dr. Gibson being a family practice physician, not a specialist in treatment and evaluation of fibromyalgia, musculoskeletal impairments, or mental impairments. Tr. 1069. In any event, the medically unacceptable diagnostic techniques are unspecified and therefore the court finds that the ALJ did not meet the first exception to the treating physician rule. See Arakas, 983 F.3d at 106–07.

Cline has had Dr. Gibson as her family physician since at least 2011, which means Dr. Gibson can provide a detailed longitudinal analysis of Cline's overall health during the period at issue. See Tr. 804–68, 875–89, 903, 904–12, 946–54, 959–84; see also 10 C.F.R. § 404.1527(c)(2) (noting that SSA will give more weight to medical opinions from treating sources since those sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)"). To the court's understanding, Dr. Gibson's extensive treatment records do not indicate any clear deviation from medically sound diagnostic techniques. Rather, the records indicate that Cline has had back pain with an onset date of January 30, 2006, and has consistently reported back pain to Dr. Gibson in subsequent visits. See, e.g., Tr. 810, 814, 822, 844, 882, 908. As of April 10, 2014, Dr. Gibson opined that "[i]t is quite possible that the patient does have fibromyalgia. She does have 12 trigger points, mostly in the neck, along with multiple other symptoms." Tr. 824–25. Subsequent doctors' visits suggest that Cline met with a specialist and received treatment for her fibromyalgia. See, e.g., Tr. 830, 844, 882. None of the above is clearly at odds with

medically acceptable clinical or laboratory diagnostic techniques. Thus, the court again concludes that the first exception to the treating physician rule is not met.

Second, Dr. Gibson's opinion is not contradicted by other substantial evidence in the record. To start, it is well established that "physical examinations [of patients with fibromyalgia] will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." Arakas, 983 F.3d at 96. Thus, Dr. Gibson's diagnosis of fibromyalgia is not inconsistent with his treatment records that show Cline had a normal range of motion. See Tr. 1069. Rather, Dr. Gibson's records indicate that Cline had objective evidence of fibromyalgia, namely consistent trigger-point findings, meaning his opinion accords with his diagnosis of fibromyalgia. Tr. 1073. The ALJ does not cite to Dr. Gibson's treating records which date from 2009 to 2014—rather, the ALJ only cites to Dr. Gibson's treating source statement to indicate that Dr. Gibson diagnosed Cline with fibromyalgia. See Tr. 1069 (citing Exs. 16F, 23F, 27F, 28F, 54F), 1073 (citing Ex. 54F). Dr. Gibson was Cline's family physician at the Medical Group of the Carolinas, Family Medicine practice at Boiling Springs as is delineated in the record. See Tr. 804–66 (Ex. 8F), 867–68 (Ex. 9F). From the ALJ's opinion, it is unclear whether the ALJ considered Dr. Gibson's opinion from those records since he did not cite to Exhibits 8F or 9F when he evaluated Dr. Gibson's opinion. See Tr. 1069, 1073. Moreover, as described above in greater detail, supra III.B.2, Cline's described daily activities are not in and of themselves inconsistent with a diagnosis of fibromyalgia because the symptoms of fibromyalgia can wax and wane so that a person may have bad days and good days. Arakas, 983 F.3d at 101 (citing SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012)). As such, Cline cleaning the

house, attending college, and providing care to others do not necessarily suggest

inconsistency with Dr. Gibson's diagnosis of fibromyalgia, especially when considered in

concert with subjective evidence from Cline that she was bedridden three days a week.

See id.; Tr. 1064.  Thus, had the ALJ properly considered Cline's fibromyalgia, Dr.

Gibson's opinion would have been given controlling weight.

   If a treating physician's opinion is not accorded controlling weight, the ALJ must

consider the following factors to determine how much weight is appropriate:

> (1) the length of the physician's treatment relationship with the claimant,
> (2) the physician's frequency of examination, (3) the nature and extent of
> the treatment relationship, (4) whether the medical evidence in the record
> supports the physician's opinion, (5) the consistency of the physician's
> opinion with the entirety of the record, and (6) the treating physician's
> specialization.

Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 354 (4th Cir. 2023) (citing 20

C.F.R. § 404.1527(c)(1)–(6)).

   The ALJ accorded little weight to the opinion evidence from the treating

physicians—Drs. Grace, Gibson, and Millon—and limited weight to Dr. Clark.  Tr. 1065,

1069–72.  The ALJ went so far as to conclude that Dr. Grace's statement "was prepared

by the claimant's attorney, as it is not on the stationary of the psychologist."  Tr. 1068.

Of the treating physicians, only Dr. Essman's overall opinion evidence was accorded

significant weight.  Tr. 1071.  Importantly SSR 96-2p mandates that generally, a treating

physician's opinion, even if not controlling, should be entitled to the greatest weight and

adopted.  SSR 96-2p, 1996 WL 374188, at *4; Arakas, 983 F.3d at 107–08.  In contrast,

the ALJ gave the greatest weight to most of the opinions of non-treating and non-

examining sources including the State Agency's consultant Dr. Wissman and State

Agency psychological consultants Drs. Von and Kendall.  Tr. 1066.  Of the non-treating

and non-examining sources, only the State Agency's consultant Dr. Frank Ferrell ("Dr. Ferrell") was given less than "great weight" as his opinion was accorded "limited weight" because his opinion conflicted with a diagnosis and treatment of Cline's arthritis.  Tr. 1066.  While an ALJ is not required to set forth a detailed factor-by-factor analysis to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion.  Triplett v. Saul, 860 F. App'x 855, 865 (4th Cir. 2021).  Thus, it is unclear whether substantial evidence supports the ALJ's decision of the respective weights given to the physicians consulted for Cline's application.

Altogether, substantial evidence does not support the ALJ's factual findings.  The court finds that the ALJ's consideration of Cline's fibromyalgia—including her objective symptoms, her daily activities, the conservative treatment plan, and the physicians' diagnosis—reflects a misunderstanding of the impairment which fundamentally impacted his factual findings.  For the foregoing reasons, the courts holds that the ALJ erred in discrediting Cline's subjective complaints regarding her fibromyalgia symptoms and the impact the impairment had on her day-to-day living.  The court also holds that the ALJ erred by according little weight to Dr. Gibson's opinion.  As such, the ALJ's assessment of Cline's RFC and consequent denial of disability benefits was based on an erroneous

legal standard and not supported by substantial evidence, and requires remand for further proceedings to correct the aforementioned errors in analysis.

### C.  Harmless Error

Moreover, the ALJ's RFC analysis does not support a finding of harmless error. Though the ALJ's explanation of the RFC mentions fibromyalgia as part of Cline's medical history, it does not fully consider her condition or its symptoms.  The ALJ suggests that the severity of Plaintiff's subjective complaints of pain is inconsistent with the evidence of Plaintiff's medically determinable impairments, supra III.A., without considering the unique characteristics of fibromyalgia.  That misunderstanding of fibromyalgia—whereby pain waxes and wanes and cannot easily be determined by objective medical evidence outside of trigger-point evidence—infects the legal standard and the ALJ's consideration of substantial evidence.  Thus, the court finds that the ALJ's error was not harmless.  As such, the court agrees with the magistrate judge that the ALJ's decision requires reversal and remand for further proceedings.

### IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R, **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), and **REMANDS** for further proceedings in accordance with the analysis set forth in SSR 12-2p and Fourth Circuit precedent.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 7, 2023**

**Charleston, South Carolina**